```
USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/9/15
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

PATRICK WILLIS,

                        Plaintiff,

                 -v-

THE CITY OF NEW YORK, P.O. MARIA
ARRUZA, and P.O. JOHN DOES #1-10,

                      Defendants.

------------------------------------------------------------X

No. 12-CV-5259 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

    Plaintiff Patrick Willis brings this case against the City of New York, Police Officer Maria Arruza, and other unknown New York City Police Department ("NYPD") officers for alleged constitutional violations stemming from his June 22, 2011 arrest. Before the Court is Defendants' motion for summary judgment. For the reasons set forth below, the Court concludes that there is no genuine issue of material fact remaining for trial and grants summary judgment to Defendants.

## BACKGROUND[1]

    On June 22, 2011 at approximately 7:45 p.m., Officers Arruza and Constantin Flesaru, each on separate foot patrols, responded to loud music coming from Plaintiff's vehicle, located near the corner of 142nd Street and Lenox Avenue in Manhattan, New York. (Defendant's Rule 56.1 Statement ("Def. 56.1") ¶¶ 5-7.) The officers approached Plaintiff's car and told him to turn the music down. (Id. ¶ 8.) Plaintiff lowered the music, but once the officers began to leave the scene, the music's volume increased. (Id. ¶¶ 8-11.) Officer Arruza then returned to the

---

[1] The following facts are taken from the parties L. Civ. R. 56.1 statements, and are undisputed except as otherwise noted.

vehicle and asked Plaintiff for his driver's license. (Id. ¶¶ 11-12.) Officer Arruza called either the NYPD's Administrative Impact Office or Central Dispatch to run Plaintiff's license through the "NYPD Finest System" ("NYPD FS"), a database containing warrant and summons information. (Id. ¶¶ 14-16.) After she was informed that Plaintiff had an open bench warrant with docket number 2011SX041939 from a disorderly conduct case in Bronx County Criminal Court, she placed Plaintiff under arrest. (Id. ¶ 2, 14-16, 18.) The entire encounter lasted approximately fifteen minutes. (Id. ¶ 19.)

Plaintiff does not dispute that on April 16, 2011, he received summons number 2011SX041939 for disorderly conduct, which required him to appear in Bronx County Criminal Court. Rather, he asserts that he appeared in Bronx County Criminal Court on the date required by the summons—June 21, 2011, the same date the warrant was issued. (Plaintiff's Rule 56.1 Statement ("Pl. 56.1") ¶¶ 1-4, 14; Def. 56.1 ¶ 1.) Defendants concede that the bench warrant had in fact been vacated on the day of the arrest. (Def. 56.1 ¶ 3.) They assert, however, that at the time of the arrest, that information had not yet been updated on the NYPD FS, which receives a daily "overnight extract file" containing summons and warrant information from the court. (Id. ¶ 16-17.)

After the arrest, Plaintiff was arraigned and released on his own recognizance. (Id. ¶ 20.) On September 15, 2011, Plaintiff's case was dismissed during a court appearance. (Id. ¶ 21.)

Plaintiff filed this action on July 6, 2012, seeking damages for civil rights violations under the state and federal constitutions, and for state law claims of negligence, invasion of privacy, battery, and prima facie tort. (Compl. ¶¶ 17-50.) Following discovery, Defendants filed the instant motion for summary judgment on all counts. (Dkt. 27.)

Defendants seek summary judgment on Plaintiff's claims for false arrest, malicious prosecution, and excessive force under 42 U.S.C. § 1983. (Defendants' Brief in Support of

Motion for Summary Judgment ("Def. Br.") at 1.)[2] Defendants argue, *inter alia*, that (1) there was probable cause for Plaintiff's arrest, detention, and prosecution, (2) Officer Arruza is protected by qualified immunity for the arrest, (3) Plaintiff's excessive force claim fails as a matter of law, (4) Plaintiff's single post-arraignment court appearance does not provide a basis for a malicious prosecution claim, (5) there is no basis for municipal liability because Plaintiff failed to establish a constitutional violation, and (6) Plaintiff's state law claims must be dismissed because he failed to file a notice of claim. (Id. at 4-23.) In his opposition to the motion, Plaintiff concedes that there is no legal basis for an excessive force claim. (Plaintiff's Opposition to Motion for Summary Judgment ("Pl. Opp.") at 15.) He maintains, however, that Defendants did not have probable cause for his arrest and that Officer Arruza is not entitled to qualified immunity; he further argues that summary judgment should be denied on his malicious prosecution and municipal liability claims. (Id. at 7, 13, 16, 18.)

## LEGAL STANDARD

Summary judgment is only appropriate where the Court concludes "after construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor, that 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Costello v. City of Burlington, 632 F.3d 41, 45 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). Federal Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Hayut v. State Univ. of New York, 352 F.3d 733, 743 (2d Cir. 2003) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

---

[2] Although the Complaint additionally cites 42 U.S.C. §§ 1981, 1985, and 1988, Plaintiff does not appear to continue to seek relief under these additional theories of liability, nor are they applicable to his factual allegations. Plaintiff asserts no contract or conspiracy claim under §§ 1981 and 1985, and he is not a prevailing party entitled to attorney's fees under § 1988.

## DISCUSSION

### I. Plaintiff's Federal Claims[3]

#### A. False Arrest

"The existence of probable cause to arrest . . . 'is a complete defense to an action for false arrest,' whether that action is brought under state law or under § 1983." Gonzalez v. City of Schenectady, 728 F.3d 149, 155 (2d Cir. 2013) (quoting Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)). "[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Weyant, 101 F.3d at 852. In conducting a probable cause analysis, a court "must consider [only] those facts available to the officer at the time of the arrest and immediately before it." Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006) (internal quotation marks and emphasis omitted).

Defendants argue that summary judgment is appropriate on Plaintiff's false arrest claim because there was probable cause for the arrest based on both Plaintiff's disorderly conduct and the existence of a bench warrant, and that in the alternative, that Officer Arruza is entitled to qualified immunity. (Def. Br. at 5-6, 9.) Plaintiff disputes that there was probable cause for the arrest, arguing that both the initial stop and the ensuing arrest were unlawful. (Pl. Opp. at 10-11.) For the reasons discussed below, the Court finds that both the stop and the arrest were lawful, and that Plaintiff's false arrest claim fails as a matter of law.

#### 1. Initial Interactions with Plaintiff and Subsequent Stop

Plaintiff argues that his arrest was not supported by probable cause because Officer

---

[3] Because Plaintiff concedes that his excessive force claim cannot be maintained, only his § 1983 claims for false arrest and malicious prosecution remain for the Court's consideration.

Arruza had no legal basis to stop Plaintiff and request his identification. (Pl. Opp. at 10-12.) The Court disagrees. The first conversation between Officer Arruza and Plaintiff, during which she approached Plaintiff and told him to turn the music down, was not a "seizure" for the purposes of a false arrest claim and did not require probable cause. "It is well-established that a police officer is free to approach a person in public and ask a few questions." United States v. Madison, 936 F.2d 90, 92 (2d Cir. 1991) (internal quotations omitted). Indeed, it is undisputed that the officer began walking away after their brief interaction. (Def. 56.1 ¶ 10; Pl. 56.1 ¶ 10.)

Plaintiff's challenge to the second interaction, when Officer Arruza returned to the vehicle and requested Plaintiff's license upon hearing the volume of Plaintiff's music increase, is similarly meritless. There appears to be no dispute that this interaction constituted a "stop" for which the officer needed only reasonable suspicion (see Def. Br. at 10-11; Pl. Opp. at 11), that is, "'a particularized and objective basis for suspecting the particular person stopped' of breaking the law.'" Heien v. N. Carolina, 135 S. Ct. 530, 536 (2014) (quoting Prado Navarette v. California, 134 S.Ct. 1683, 1687-88 (2014)). That "reasonable suspicion" test is met in this case.

Under New York law, "[a] person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof . . . He makes unreasonable noise." N.Y.P.L. § 240.20(2). Because the statute targets behavior of a public dimension, "a person may be guilty of disorderly conduct only when the situation extends beyond the exchange between the individual disputants to a point where it becomes a potential or immediate public problem." People v. Baker, 984 N.E.2d 902, 905 (N.Y. 2013) (internal quotations omitted); see also Weyant, 101 F.3d at 855 (citing People v. Munafo, 406 N.E.2d 780, 783 (N.Y. 1980)).

The material facts regarding Plaintiff's stop are undisputed: the officers approached Plaintiff on the street and asked him to turn down his music; after the music's volume increased,

5

Officer Arruza approached him a second time and requested his identification with the intent of issuing a summons. (Def. 56.1 ¶¶ 7-12; Pl. 56.1 9-11.) Officer Arruza later described the music as "loud," "thumping," and "disturbing" (Arruza Dep. at 20-21), and Officer Flesaru testified that he heard the music from approximately 150 feet away (Flesaru Dep. at 14). Although Plaintiff objects to Defendants' characterization of the music and claims he did not turn it up, he concedes that the music's volume increased after the officers walked away because he opened his car door and the speaker was located on the side of the door. (Willis Dep. at 56.) These circumstances were sufficient to cause an officer to reasonably suspect Plaintiff of making "unreasonable noise." N.Y.P.L. § 240.20(2). Plaintiff has not pointed to any evidence that would cast doubt on the officer's asserted basis for the stop. His conclusory assertion that that she "totally lacked" reasonable suspicion (Pl. Opp. at 11), is insufficient to create an issue for trial.

To the extent Plaintiff separately contends that New York's disorderly conduct statute cannot support a lawful stop, that argument is similarly unavailing. Plaintiff cites no authority barring police officers from stopping persons suspected of disorderly conduct—a position which is entirely inconsistent with cases evaluating reasonable suspicion and probable cause under the statute. See e.g., Swartz v. Insogna, 704 F.3d 105, 111 (2d Cir. 2013); Weyant 101 F.3d at 855. Moreover, the record evidence establishes that Officer Arruza stopped Plaintiff because she believed his music was loud enough to violate the law. Even assuming, however, that the officer was mistaken about the scope of the statute, or about whether Plaintiff's conduct was sufficient to violate it, no reasonable juror could conclude that she did not have reasonable suspicion to believe that he had made "unreasonable noise." N.Y.P.L. § 240.20(2). As the Supreme Court explained in Heien, an officer's reasonable suspicion may encompass reasonable mistakes of fact or law. 135 S. Ct. at 536 (discussing officer's mistake of law regarding provisions of motor

vehicle code).[4]

Finally, because the Court concludes that there was reasonable suspicion for the stop, Plaintiff's argument that Officer Arruza improperly requested his license and searched his records also fails. (Pl. Opp. at 11.) "Once a lawful stop for investigative purposes is under way, it is mere routine for an officer to ask for identification," United States v. Salter, 521 F.2d 1326, 1329 (2d Cir. 1975); such a request is lawful as long as it is "reasonably related to the circumstances justifying the stop." Hiibel v. Sixth Judicial Dist. Ct. of Nev., Humboldt Cnty, 542 U.S. 177, 188 (2004). Requesting identification is considered "relatively non-intrusive" and assists the officer in correctly identifying the person under suspicion of unlawful conduct. Salter, 521 F.2d at 1329 (citing "important reasons" why correct identification is important, such as allowing an officer to contact a person at later date, or to uncover related, illegal behavior). In this context, conducting law enforcement database searches does not render the stop unlawful "so long as those inquiries do not measurably extend the duration of the stop." See United States v. Bernacet, 724 F.3d 269, 274 (2d Cir. 2013) (discussing database search following lawful stop at traffic checkpoint) (quotation and citation omitted); United States v. Harrison, 606 F.3d 42, 45 (2d Cir. 2010) (discussing questioning following traffic stop);[5] see also United States v. Bailey, 743 F.3d 322, 338 (2d Cir. 2014) (discussing range of permissible investigative techniques during stop).

---

[4] Plaintiff wrongfully asserts that a mistaken belief about the law cannot support reasonable suspicion, relying on a criminal case from this district that predates Heien. (Pl. Opp. at 11 (citing United States v. Williams, 02 Cr. 1372 (BJS), 2004 LEXIS 10943 (S.D.N.Y. June 15, 2004)). In any event, Plaintiff's reliance on Williams is misplaced; following a suppression hearing, the Williams Court merely requested further briefing from the Government on the reasonableness of stopping a person suspected of committing a violation. Id. The Court then denied the suppression motion in a subsequent opinion. See 2004 WL 1783636 (S.D.N.Y. Aug. 10, 2004). Moreover, although Heien was decided after the filing of Plaintiff's opposition, the Court explained that its holding was wholly consistent with "cases dating back two centuries." 135 S. Ct. at 536-67.

[5] The principle articulated in the cases involving traffic stops applies equally here: a seizure that is "lawful at its inception" can violate the Fourth Amendment only if "its manner of execution unreasonably infringes interests protected by the Constitution." Illinois v. Caballes, 543 U.S. 405, 407 (2005) (citing United States v. Jacobsen, 466 U.S. 109, 124 (1984)).

7

As established above, Officer Arruza had a clear, objective basis for suspecting Plaintiff of engaging in disorderly conduct. There is no evidence that the license check was anything but a "commonsense inquiry" allowing Officer Arruza to confirm Plaintiff's identify and to uncover any related criminal conduct—which, in fact, it did reveal. See Hiibel, 542 U.S. at 189. Plaintiff does not assert that the officer's stated purpose for conducting the stop and requesting Plaintiff's license was pretextual. Likewise, there is no evidence that the database search significantly extended the duration of the stop—which, including the subsequent arrest, lasted less than fifteen minutes. (Def. 56.1 ¶ 19.) For these reasons, the identification check did not "convert the encounter into something other than a lawful seizure." Arizona v. Johnson, 555 U.S. 323, 333 (2009); Bernacet, 724 F.3d at 274 (same).

There is thus no genuine dispute remaining regarding the legality of Officer Arruza's conduct prior to the arrest.[6]

### 2. The Arrest

Defendants argue that Plaintiff's arrest was supported by probable cause based on (1) Plaintiff's conduct, and in the alternative, (2) Plaintiff's open bench warrant in the NYPD FS. The Court agrees only in part: although Plaintiff's conduct was insufficient to establish beyond genuine dispute probable cause to arrest for disorderly conduct, Officer Arruza's discovery of the bench warrant provided probable cause to arrest for an open warrant, even though, unknown to her at the time, the warrant had been vacated earlier that day.

#### a. Probable Cause to Arrest for Disorderly Conduct

Defendants first argue that the circumstances of the incident—the volume of the music,

---

[6] Furthermore, at least one court in this district has found that the illegality of an initial stop did not give rise to a false arrest claim where the arrest itself was supported by probable cause. Miller v. City of New York, No. 11 Civ. 6663 (JSR), 2012 WL 2524248, at *4 (S.D.N.Y. June 26, 2012) ("[T]he mere fact that an arrest would not have occurred but for an unconstitutional stop does not invalidate that arrest.") (citing United States v. Bailey, 691 F.2d 1009, 1016-17 (11th Cir. 1982)).

the location of the car in a residential neighborhood, and Plaintiff's refusal to comply with the officers' directives—established probable cause for an arrest for disorderly conduct. (Def. Br. at 6.) Plaintiff disputes that this conduct was sufficient to violate the disorderly conduct statute. (Pl. Opp. at 7-9.)

There remains a genuine dispute as to whether Officer Arruza had probable cause to arrest Plaintiff for disorderly conduct. In fact, Officer Arruza testified during her deposition that she did not intend to arrest Plaintiff for disorderly conduct, but merely issue him a summons. (Arruza Dep. at 45-46.) She further clarified that she only arrested Plaintiff, instead of issuing a summons, after discovering the open bench warrant. (Id. at 46; Def. 56.1 ¶¶ 12-13, 17.)

Furthermore, Defendants fail to establish as a matter of law that Plaintiff's actions were sufficient to support a disorderly conduct arrest. See Weyant, 101 F.3d at 855 (discussing elements of disorderly conduct offense under New York law). Specifically, Defendants have failed to establish as a matter of law that Plaintiff's conduct rose to the level of public harm—an element required under New York law. See Baker, 984 N.E.2d at 906 (explaining that the public harm element is often determinative of the validity of disorderly conduct charges under New York law); see also Weyant, 101 F.3d at 855. In assessing public harm, the Court may consider factors such as "the time and place of the episode under scrutiny; the nature and character of the conduct; the number of other people in the vicinity; whether they are drawn to the disturbance and, if so, the nature and number of those attracted; and any other relevant circumstances." Baker, 984 N.E.2d at 906 (quoting People v. Weaver, 944 N.E.2d 99, 101 (N.Y. 2011)). Viewing the evidence in Plaintiff's favor, public harm is not apparent; there is no evidence, for instance, that other people in the vicinity complained about the conduct or that any bystanders were drawn

to the disturbance.[7] The Court thus cannot conclude as a matter of law that there was probable cause for the arrest based on Plaintiff's conduct.

### b. Probable Cause to Arrest on the Bench Warrant

In the alternative, Defendants argue that Officer Arruza had probable cause to arrest Plaintiff because the NYPD FS showed an open bench warrant for his arrest. (Def. Br. at 13; Def. 56.1 ¶ 14.) Plaintiff refutes that claim, asserting that Officer Arruza could not "state with any degree of certainty" the specific source of the warrant information (Pl. 56.1 ¶ 14), and generally argues that she did not act with "objective reasonableness" in making the arrest because she failed to read the Patrol Guide, (Pl. Opp. at 13). Because there is no genuine dispute of fact as to whether the system showed an open bench warrant against Plaintiff, the Court agrees that the arrest was supported by probable cause.

Under Second Circuit law,"[w]hen an officer learns from a computer database . . . that a person is the subject of an outstanding arrest warrant, probable cause exists to arrest that person." United States v. Miller, 265 F. App'x 5, 7 (2d Cir. 2008) (discussing information from New York State Police Information Network database) (citing United States v. Santa, 180 F.3d 20, 27 (2d Cir. 1999)). Because the probable cause inquiry turns on the facts available to the arresting officer, the Court in Santa held that reliance on such information was objectively reasonable even though it was later revealed that the warrant had been vacated. 180 F.3d at 27 (explaining that at the time of the arrest, the arresting officer did not know and had no reason to know, that the warrant had been vacated).

The facts of this case mirror those in Santa in this regard: at the time of the arrest, Officer Arruza relied on warrant information from the NYPD FS that was no longer accurate. Plaintiff's

---

[7] Officer Arruza testified at her deposition that she saw "people's heads turn to the car," but did not indicate whether anyone stopped at or approached the car. (Arruza Dep. at 34.)

June 21, 2011 bench warrant was vacated on June 22, 2011—the day of the arrest. (Tufano Aff. ¶¶ 6-7; June 22, 2011 Dismissal of Charges.) But as in Santa, Officer Arruza had no way of knowing that the information she received was erroneous. See 180 F.3d at 27-29. Because the warrant and summons information in NYPD FS is updated daily via an overnight extract file, the database would not have reflected new information from Bronx County Criminal Court until the following day. (Tufano Aff. ¶¶ 11-13.) Despite the resulting inaccuracy, however, "[t]he warrant check system's report of outstanding warrants for [Plaintiff's] arrest gave [the arresting officer] probable cause to arrest [him], defeating his claim for false arrest." Miller v. City of New York, No. 11 Civ. 6663 (JSR), 2012 WL 2524248, at *4 (S.D.N.Y. June 26, 2012).

Plaintiff has not challenged the reliability of the system or presented any evidence that Officer Arruza acted unreasonably in utilizing it. Instead, Plaintiff generally challenges the existence of a warrant, asserting that Officer Arruza could not adequately identify the source of the warrant information. (Pl. 56.1 ¶ 14.) Plaintiff does not dispute, however, that he was issued summons number 2011SX041939 for disorderly conduct and ordered to appear in Bronx County Criminal Court. (Id. ¶¶ 1-2.) That summons corresponds with the warrant information provided to Officer Arruza at the time of the arrest, which pertained to the same disorderly conduct case, docket number 2011SX041939. (Def. 56.1 ¶ 14.) Plaintiff's position is further contradicted by Bronx County Criminal Court records, which show that the warrant was issued on June 21, 2011. (Tufano Declaration ¶ 6; Bronx County Criminal Court Calendar Entry, June 21, 2011.) In addition, Plaintiff, Officer Arruza, and Officer Flesaru all testified that Officer Arruza told Plaintiff at the time of the arrest that there was an open warrant for his arrest. (Willis Dep. at 58; Arruza Dep. at 45; Flesaru Dep. at 34.)

To the extent Plaintiff further challenges a finding of probable cause because Officer Arruza did not "utilize the Patrol Guide," that challenge also fails. (Pl. 56.1 ¶ 23; Pl. Opp. at 3.)

11

Although the officer admitted during her deposition that she had not read every page of the Patrol Guide (Arruza Dep. at 36), Plaintiff has failed to establish any reason that calls into question the legality of the arrest. Indeed, Plaintiff has not even alleged that any particular procedure followed by Officer Arruza, including the making of an arrest upon the discovery of an open warrant, violated the policies and procedures set forth in the Patrol Guide.

The Court thus concludes that the open warrant in the NYPD FS on the date of the arrest provided probable cause to arrest. Accordingly, summary judgment is granted on Plaintiff's false arrest claim.

### 3. Qualified Immunity

Defendants further argue that even if probable cause is not established as a matter of law, Officer Arruza is entitled to qualified immunity because it was "objectively reasonable" for her to believe that there was probable cause for the arrest and that her actions were lawful. (Def. Br. at 7-8.) The Court agrees.

It is well-established that qualified immunity is not a "mere defense," but rather full immunity from suit. Pearson v. Callahan, 555 U.S. 223, 231 (2009). Courts engage in a two-part inquiry to resolve questions of qualified immunity at summary judgment. Tolan v. Cotton, 134 S. Ct. 1861, 1865 (2014). "The first asks whether the facts, '[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a [federal] right.'" Id. (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)). The second prong asks "whether the right in question was 'clearly established' at the time of the violation." Id. (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)). Because the right to be free from arrest without probable cause was clearly established at the time of Plaintiff's arrest, the Court's inquiry is limited to whether Officer Aruzza's conduct violated that right—a determination that requires the Court to decide whether her actions were objectively reasonable. See Martinez v.

12

Simonetti, 202 F.3d 625, 634 (2d Cir. 2000) (collecting cases). "An officer's determination is objectively reasonable if there was 'arguable' probable cause at the time of arrest—that is, if 'officers of reasonable competence could disagree on whether the probable cause test was met.'" Jenkins v. City of New York, 478 F.3d 76, 87 (2d Cir. 2007) (citing Lennon v. Miller, 66 F.3d 416, 423-24 (2d Cir. 1995)).

The existence of an open bench warrant for Plaintiff in the NYPD FS was an objectively reasonable basis for Officer Arruza to determine that she had probable cause to arrest him. Reliance on such information has been generally sanctioned by courts in this Circuit and nothing in this record suggests that a reasonable officer would doubt the reliability of the NYPD FS in particular. Therefore, officers of "reasonable competence" could conclude that the presence of an open warrant in the NYPD FS established probable cause for arrest. Accordingly, summary judgment is also appropriate on the basis of qualified immunity.

### B. Malicious Prosecution

To prevail on a malicious prosecution claim under § 1983, "a plaintiff must show a violation of his rights under the Fourth Amendment and must establish the elements of a malicious prosecution claim under state law." Manganiello v. City of New York, 612 F.3d 149, 161 (2d Cir. 2010) (citations omitted). Those elements are: "'(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.'" Id. (quoting Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir. 1997)).

As with a claim for false arrest, probable cause provides a complete defense to a malicious prosecution claim. Manganiello, 612 F.3d at 161-62 (quotations omitted). Under New York law, however, "even when probable cause is present at the time of arrest, evidence could later surface which would eliminate that probable cause." Mayer v. City of New Rochelle, No.

01 Civ. 4443 (MBM), 2003 WL 21222515, at *7 (S.D.N.Y. May 27, 2003) (quoting Lowth v. Town of Cheektowaga, 82 F.3d 563, 571 (2d Cir. 1996)). To negate probable cause, "the groundless nature of the charges must be made apparent by the discovery of some intervening fact." Lowth, 82 F.3d at 571.

There is no intervening fact negating probable cause in this case. As discussed above, the bench warrant in the NYPD FS established probable cause for Plaintiff's arrest. Although the warrant had been vacated earlier in the day, the record is bereft of any evidence that Officer Arruza learned of that fact between the time of the arrest and when she handed the case over to the District Attorney's Office. Officer Arruza testified that on the night of the arrest, she spoke to Assistant District Attorney Melnik Sahlein and faxed him the arrest report and criminal complaint. She did not recall speaking to Sahlein again, or appearing in court in connection with the arrest. (Arruza Dep. at 28, 55, 58-59; Willis Arrest Report.) Plaintiff has not produced any evidence to the contrary.[8] Therefore, "in the absence of some indication that the authorities became aware of exculpatory evidence between the time of the arrest and the subsequent prosecution that would undermine the probable cause which supported the arrest, no claim for malicious prosecution may lie." Johnson v. City of Mount Vernon, No. 10 Civ. 7006 (VB), 2012 WL 4466618, at *5 (S.D.N.Y. Sept. 18, 2012) (citation omitted); see also Powell v. Murphy, 2014 WL 6609994, at *2, --F. App'x-- (2d Cir. Nov. 24, 2014) (affirming summary judgment for officer defendants where plaintiff did not show that defendants learned any intervening facts between arrest and initiation of prosecution).

---

[8] Rather, the evidence suggests that by the time it emerged that the warrant had been vacated, responsibility for the prosecution had already shifted from Officer Arruza to the prosecutor. The lack of evidence of any further involvement by Officer Arruza precludes liability for malicious prosecution. See Coleman v. City of New York, 49 F. App'x 342, 345 (2d Cir. 2002) (affirming summary judgment for officer defendants where the only fact that could have exonerated plaintiff surfaced after case was in prosecutor's hands); Glassman v. City of New York, No. 10 Civ. 2468 (SHS), 2013 WL 31952, at *7 (S.D.N.Y. Jan. 3, 2013) (affirming summary judgment where record evidence established that District Attorney had knowledge of evidence, but did not establish that officer defendants did.)

14

For similar reasons, the malicious prosecution claim also fails on the "malice" prong. "Under New York law, malice does not have to be actual spite or hatred, but only a showing 'that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served.'" Lowth, 82 F.3d at 573 (quoting Nardelli v. Stamberg, 377 N.E.2d 975, 976 (N.Y. 1978)). Here, the record is devoid of any indication that Officer Arruza acted with an improper purpose. See Glassman, 2013 WL 31952, at *8 (finding no malice where there was no evidence that officer "commenced the prosecution, or altered the charges, with actual malice); Keith v. City of New York, No. 11 Civ. 3577 (KPF), 2014 WL 6750211 at *19-20 (S.D.N.Y. Dec. 1, 2014).[9]

In sum, Plaintiff has failed to adduce any evidence to support the lack of probable cause and malice elements of his malicious prosecution claim. The claim therefore fails as a matter of law.

### C. Municipal Liability

Summary judgment is also appropriate as to Plaintiff's claim for municipal liability. To state a constitutional claim for relief against the City, or any other municipal body, a plaintiff must allege that his constitutional injury occurred as a result of an "official municipal policy." Cash v. Cnty. of Erie, 654 F.3d 324, 333 (2d Cir. 2011). Because municipalities "are responsible only for their *own* illegal acts," they cannot be held "vicariously liable under § 1983 for their employees' actions." Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011) (citations omitted).

---

[9] Defendants raise the additional argument that Plaintiff's malicious prosecution claim fails as a matter of law because Plaintiff's two court appearances did not rise to the level of the constitutional deprivation required for the § 1983 claim. Pursuant to the Court's decision in Swartz v. Insogna, however, "a post-arraignment defendant who is 'obligated to appear in court in connection with [criminal] charges whenever his attendance [i]s required' suffers a Fourth Amendment deprivation of liberty." 704 F.3d 105, 112 (2d Cir. 2013) (quoting Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir. 1997)). In this case, Plaintiff was required to appear in court twice: at his initial arraignment and at the later hearing date, during which the charge was dismissed. Although he was out on bail between the appearances, the deprivation may still be of a constitutional dimension under Swartz. Summary judgment would thus not be appropriate on this basis.

Official municipal policy "includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Id. (citing Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 691 (1978)). Not only has Plaintiff failed to produce any evidence that he suffered a constitutional injury, he has failed to establish that any such purported violation occurred as a result of an official municipal policy. Summary judgment is thus granted in favor of the City.

## II. State Law Claims

Defendants argue that Plaintiff's state law claims must be dismissed because Plaintiff failed to file a notice of claim. (Def. Br. at 22.) Under New York law, "[n]o action . . . shall be prosecuted or maintained against the city . . . or any employee . . . unless a notice of clam shall have been made and served upon the city." N.Y. Gen. Mun. L. § 50i(l). Such notice must be filed within 90 days of the claim arising, id. § 50-e(1)(a), and failure to file the notice is grounds for dismissal of the claim, Bloomfield Bldg. Wreckers, Inc. v. City of Troy, 364 N.E.2d 1130, 1131 (N.Y. 1977); Crair v. Brookdale Hosp. Medical Center, 728 N.E.2d 974, 978 (N.Y. 2000). Plaintiff has not asserted that he served a notice of claim on the City, nor has he opposed the dismissal of the state law claims. The state law claims are thus dismissed.

## III. Claims Against John Doe Defendants

Finally, Defendants "John Does # 1-10" have not been identified or served with a summons and complaint. "It is a general principle of tort law that a tort victim who cannot identify the tortfeasor cannot bring suit." Valentin v. Dinkins, 121 F.3d 72, 75 (2d Cir. 1997) (*per curiam*) (relaxing rule in case brought by *pro se* litigants). Discovery is now complete and Plaintiff has had ample opportunity to seek the information required to identify any additional Defendants and effectuate service. Because he has failed to do so, Defendants "John Does # 1-10" must be dismissed. See e.g. Tatum v. City of New York, No. 06 Civ. 4290 (BSJ), 2009 WL

16

124881, at *12 (S.D.N.Y. Jan. 20, 2009); Hill ex rel. Hill v. Nieves, No. 06 Civ. 8213 (DLC), 2008 WL 858455, at *5 (S.D.N.Y. Mar. 31, 2008).

## CONCLUSION

For the reasons discussed above, there is no issue of material fact remaining for trial as to any of Plaintiff's claims. Accordingly, summary judgment is GRANTED to Defendants. The Clerk of the Court is respectfully directed to close item 27 on the docket and close the case.

SO ORDERED.

Dated:   February 9, 2015
         New York, New York

_____
Ronnie Abrams
United States District Judge